IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WARREN LEROY MILLER,                                CV. 07-169-MA

             Petitioner,                OPINION AND ORDER

    v.

BRIAN BELLEQUE,
Superintendent, Oregon State
Penitentiary,

             Respondent.

FRANCESCA FRECCERO
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

JOHN R. KROGER
Attorney General
SUMMER R. GLEASON
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

    Attorneys for Respondent

MARSH, Judge

    Petitioner, an inmate in the custody of the Oregon Department

of Corrections, brings this habeas corpus action pursuant to 28

1 - OPINION AND ORDER

U.S.C. § 2254.    For the reasons set forth below, petitioner's habeas corpus petition is denied and this proceeding is dismissed.

## BACKGROUND

On March 30, 1999, petitioner was indicted on charges that he sexually abused his step-daughter, "KS".    Petitioner, a friend of the victim's father, moved into the family home in March 1998.    In June 1998, petitioner moved out until the victim's parents divorced in October 1998.    Petitioner moved back into the family home shortly thereafter, and petitioner and the victim's mother married in January 1999.

KS, who was 14 at the time of trial, testified at length. KS described that she started having trouble with juvenile authorities in sixth grade.    KS testified that she ran away from home, shoplifted, often skipped school, and was on probation.    KS was sent to Oak Creek juvenile detention facility for probation violations in July 1998 for seven days and again in November 1998 for ten days.

Upon her release in November, KS was placed in a state-certified therapeutic foster care home run by Debbie Barreras from December 1998 until June 1999.    While living with Barreras, KS disclosed that she had been abused by petitioner. Following that foster care placement, KS was sent to live with her aunt and uncle in Tucson, Arizona until petitioner's trial in November 1999.

KS testified that her mother worked as certified nursing assistant, typically from 10 p.m. until 7 a.m., and that she was often unsupervised at night.  (Tr. 175.)  KS admitted that when petitioner was living in the house, she regularly used alcohol and marijuana, and occasionally used methamphetamine, and that she had previously tried acid, and sniffed glue and aerosols.  (Tr. 179-80.)  KS testified that she believed petitioner used methamphetamine while living at her home, and that petitioner never prevented her from using drugs or alcohol in the home despite seeing her and her friends doing so.  (Tr. 70, 74.)

KS described in detail four separate occasions of abuse.  She described the first incident occurring in March or April 1998.  KS testified that she had been drinking, and "sort of" felt like passing out, and had laid down on a mattress in her closet.  (Tr. 191.)  KS stated that petitioner entered the closet and sat on the mattress beside her.  KS described how petitioner rubbed her stomach, then moved his hand under her shirt and touched her breasts over her bra.  (Tr. 202-04.)  KS stated that petitioner touched her upper thighs, and when a light came on in the hallway, petitioner left.  (Tr. 205-07.)

KS testified that a second incident involving petitioner occurred sometime after October 1998.  (Tr. 228.)  KS described going into the garage to get lighter fluid for a barbeque at the house.  KS testified that petitioner followed her there and again

3 - OPINION AND ORDER

rubbed her stomach and touched her breasts over her bra. (Tr. 220-25.)  KS testified that petitioner stated her sister was more developed than she was.  (Tr. 225.)

KS described a third incident occurring in her bedroom in November 1998, shortly after her fourteenth birthday.  KS testified that she was sleeping in her bedroom when petitioner entered and sat on the bed next to her.  (Tr. 233.)  KS stated that petitioner rubbed her stomach, touched her breasts and penetrated her vagina with his finger.  (Tr. 235-36.)

KS testified that the fourth incident occurred shortly thereafter.  KS had been drinking alone and was stoned from smoking marijuana.  (Tr. 239.)  KS stated that she was slouched on the couch in her bedroom when petitioner entered her room and sat beside her.  (Tr. 241.)  KS testified that petitioner again rubbed her stomach, breasts and thighs, and again penetrated her vagina with his finger.  (Tr. 243-44.)

On cross-examination, KS admitted that while living in Tucson, she called her mother Cynthia Miller, who had recently married petitioner, and told Miller that she wasn't sure petitioner had abused her.  (Tr. 317-18.)  On re-direct, KS stated that she told Miller that petitioner hadn't abused her because Miller made her feel guilty.  (Tr. 330-31.)

Cynthia Miller testified at the trial on petitioner's behalf. Miller admitted that she was aware that her children--including KS-

-used alcohol and drugs, but that she had informed the kids that they were not do it in the house. (Tr. 576, 590-93.)    Miller admitted that she was upset that she couldn't talk with KS about the sexual abuse allegations against petitioner, and that despite being warned by the prosecutor not to discuss the allegations with KS, she did so anyway. (Tr. 584.) Miller admitted that she was charged with witness tampering for repeatedly attempting to contact KS to discuss the allegations, and she admitted that she tried to get KS's sister to contact KS for her.  (Tr. 573, 622.)

During closing arguments, the prosecution asked the jury to find petitioner guilty of Sexual Abuse in the First Degree if they found the conduct occurred before KS's fourteenth birthday.  If the jury found the conduct occurred after KS turned 14, they should find petitioner guilty of the lesser included charge of Sexual Abuse in the Third Degree.  If the jury concluded that the Unlawful Sexual Penetration occurred after KS turned 14, the prosecution asked that they find petitioner not guilty on those counts. (Tr. 634-38.)  The jury convicted petitioner on three counts of Sexual Abuse in the First Degree and three counts of Sexual Abuse in the Third Degree, the lesser included charges.   The jury acquitted petitioner on the two counts of Unlawful Penetration. (Resp. Exh. 101.)

At a sentencing hearing on December 14, 1999, KS recanted her testimony, informing the court: "the things I said weren't true. I

lied." (Tr. 709.) KS was placed in protective custody and the Albany Police Department investigated. The court continued the sentencing hearing until January 19, 2000, at which time petitioner was sentenced to a total of 132 months imprisonment.

Petitioner's trial counsel moved for a new trial on the basis of KS's recanted testimony. At the January 28, 2000 hearing on the new trial motion, KS testified that her original testimony was true, and that she had recanted because she loved her mother and wanted to return home. (Tr. 738.) KS stated that she recanted because she missed her mother and thought her mother wanted her to say that she had lied. (Tr. 746.)

In denying the motion for a new trial, the trial judge offered the following rationale:

> There is no secret that the victim, a teenager, has been
> subjected to pressures by this case. Her mother was
> accused of Tampering with a Witness, she was kicked back
> and forth between relatives and locations and a "no
> contact" provision with her mother (because of the
> criminal charge pending) caused more stress and pressure.
> These circumstances were no secret to the jury. Her
> recantation at the sentencing and her almost immediate
> statement that she lied because she thought it would
> reunite[] her with her mother would "probably" be no
> surprise to the jury. It was no surprise to me. I am
> not unmindful that [petitioner] was sentenced to
> approximately eleven years incarceration but I cannot say
> in good conscience that the verdict would "probably" be
> different if the jury heard about the latest recantation
> and subsequent statement and testimony reaffirming her
> prior statements about sexual contact between her and
> [petitioner]. The victim had been less than consistent
> in her story before the sentencing. The jury heard all
> this evidence and still convicted. (Resp. Ex. 117.)

Petitioner directly appealed his convictions. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. State v. Miller, 184 Or. App. 225, 56 P.3d 968 (2002), rev. denied, 335 Or. 267 (2003).

Petitioner subsequently filed a state post-conviction proceeding, alleging that trial and appellate counsel rendered ineffective assistance. The post-conviction court (PCR court) denied relief, the Oregon Court of Appeals affirmed, and the Oregon Supreme Court denied review. Miller v. Belleque, 209 Or. App. 378, 148 P.3d 925 (2006), rev. denied, 342 Or. 256 (2007).

## DISCUSSION

Petitioner seeks habeas relief on four grounds: (1) trial counsel was ineffective for failing to investigate KS's foster mother Debbie Barreras; (2) the trial court denied petitioner's right to a new trial; (3) the prosecution and other state actors improperly influenced the victim's testimony; and (4) petitioner's conviction was based on infirm testimony, which has now been recanted, violating his due process rights. In his briefing to this court, petitioner discusses only ground one.

Respondent moves to deny habeas corpus relief on the basis that grounds two, three, and four are procedurally defaulted because they were not presented to Oregon's highest court and because they were not traversed. Respondent also contends that

ground one was not fairly presented and thus is procedurally defaulted.

I. **Procedural Default**.

    A. **Standards**.

    Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claims to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005). A petitioner must seek discretionary review in the state's highest court in order to fully exhaust his state remedies. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A fair presentation requires that a petitioner describe the operative facts and the federal legal theory on which he bases his claim in a procedural context in which the claims may be considered. Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008). Accord Castille v. Peoples, 489 U.S. 346, 351 (1989); Peterson v. Lampert, 319 F.3d 1153, 1155-56 (9th Cir. 2003).

    When a state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally

defaulted.  <u>Casey</u>, 386 F.3d at 920, <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991).  Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750.

**B.   Grounds Two, Three, and Four Are Procedurally Defaulted.**

In his post-conviction proceeding, petitioner raised grounds one through four.  (Resp. Exh. 108.)  But as petitioner concedes, he raised only ground one in his appeal to the Oregon Court of Appeals and the Oregon Supreme Court, failing to raise the remaining claims.  Accordingly, grounds two, three and four were not exhausted at the appellate level and thus are procedurally defaulted.  <u>Baldwin</u>, 541 U.S. at 29; <u>Casey</u>, 386 F.3d at 915-16; ORS 138.071; ORS 138.510(3); ORS 138.550.  Because petitioner has not demonstrated cause and actual prejudice to excuse his procedural default, or that a fundamental miscarriage of justice will occur if his claims are not considered, habeas corpus review is precluded as to grounds two, three and four.  <u>O'Sullivan</u>, 526 U.S. at 848; <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996).

**C.   Ground One Was Fairly Presented.**

In ground one, petitioner contends that he received ineffective assistance when his trial counsel failed to investigate whether Debbie Barreras, the victim's foster mother, influenced KS

or others in her care to make false accusations of abuse. Respondent argues that although petitioner assigned error to this claim, it is nevertheless procedurally defaulted because petitioner did not separately challenge the PCR court's factual findings underlying the claim. Respondent reasons that in the absence of a challenge to the PCR court's factual findings, petitioner did not present this claim to the Oregon appellate courts in a procedural context where the merits of the claim would be considered. Respondent's argument is of little merit.

This very argument was rejected recently in <u>Burnham v. Blacketter</u>, 2009 WL 1176469 (D. Or. Apr. 28, 2009). In <u>Burnham</u>, the court rejected respondent's assertion that the petitioner's claims were procedurally defaulted because the petitioner failed to separately assign error to the trial court's factual findings and the Oregon Court of Appeals dismissed the case on summary affirmance. <u>Id.</u>    As the <u>Burnham</u> court determined, the cases relied upon by respondent are readily distinguishable.

In <u>State v. Lynch</u>, the Oregon Court of Appeals concluded that a *respondent* could not raise a legal issue on appeal that conflicted with the trial court's finding of historical fact to which he had not *cross assigned error*. 135 Or. App. 528, 532 n.2, 900 P.2d 1042, <u>rev. denied</u>, 322 Or. 362 (1995)(emphasis added). In <u>Meyers v. Maass</u>, the court simply held that it "need not consider petitioner's arguments that disregard the post-conviction court's

supportable findings of fact."   106 Or. App. 32, 34 n.1, 806 P.2d 695 (1991).

I also conclude that State v. Johnson, on which respondent relies, is not on point.  335 Or. 511, 523, 73 P.3d 282 (2003). Johnson states the general rule that an appellate court is bound by a trial court's findings, if there is evidence in the record to support them.  Id.   Johnson does not discuss under what circumstances those findings must be assigned as error under ORAP 5.45(1).  Id.

In sum, the cases cited by respondent do not hold that an appellant who makes an assignment of error which conflicts with the underlying factual findings of the trial court, must also assign as error those factual findings in order to have his assignment considered on appeal.  Burnham, 2009 WL 1176469 at *3. Furthermore, respondent's argument overlooks the principle that "with regard to the ultimate constitutional question, the state appellate court is *not* bound by the post-conviction court's findings if the appellate court 'believe[s] the historical facts upon which such a finding is based are insufficient to meet constitutional standards.'"  Burnham, 2009 WL 1176469 at *3; quoting Ball v. Gladden, 250 Or. 485, 487-88, 433 P.2d 621 (1968); see also Krummacher v. Gierloff, 290 Or. 867, 869-70, 627 P.2d 458 (1981).

Like <u>Burnham</u>, in the absence of Oregon authority directly holding that an appellant who raises an assignment of error which conflicts with the underlying factual findings of a trial court must also separately assign error to those underlying factual findings, I decline to require a habeas petitioner do so in order to fairly present his case for exhaustion purposes.

I conclude that petitioner has fairly presented the legal theory and operative facts of his ineffective assistance of counsel claim asserted in ground one. Petitioner presented this claim in his second amended petition for post-conviction relief, as well as in his appeals to the Oregon Court of Appeals and Oregon Supreme Court. (Resp. Exhs. 108, 129, & 131 (incorporating arguments.)) Moreover, within the appellate briefing, petitioner specifically identifies the factual findings and conclusions of law he challenges that underlie the post-conviction court's denial of relief. (Resp. Exh. 129 p. 10-11.) The exhaustion requirement is satisfied and petitioner's first ground for relief is not procedurally defaulted.

## II.  **Merits.**

Respondent moves to deny habeas corpus relief on the basis that the state court's rejection of petitioner's remaining claim for relief is entitled to deference under 28 U.S.C. § 2254(d).  I agree.

///

12 - OPINION AND ORDER

**A.    Standards.**

Under 28 U.S.C. § 2254(d), federal habeas corpus relief may not be granted on a claim that was adjudicated on the merits in state court, unless the adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  The state court's application of Strickland must not only be erroneous, it must be objectively unreasonable.  Lockyer v. Andrade, 538 U.S. 63, 69 (2003); Yarborough v. Gentry, 540 U.S. 1, 4 (2003).

Under Strickland v. Washington, to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.  466 U.S. 668, 687 (1984); Bell v. Cone, 535 U.S. 685, 698-99 (2002); Williams v. Taylor, 529 U.S. 362, 390 (2000).  Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficient performance, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  To establish prejudice, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  <u>Bell</u>, 535 U.S. at 695; <u>Williams</u>, 529 U.S. at 390-91; <u>Strickland</u>,  466 U.S. at 687, 694.

Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct,"  and this presumption of correctness may be rebutted only by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.  Analysis.**

Petitioner's argument before this court is twofold: (1) the PCR court made an unreasonable determination of the facts in light of the evidence presented at the post-conviction proceeding; and (2) the PCR court unreasonably applied <u>Strickland</u> when it concluded that trial counsel did not provide ineffective assistance.    I address each claim separately below.

**1.    The PCR Court Did Not Make An Unreasonable Determination of the Facts.**

Petitioner argues that the PCR court's factual finding that trial counsel did not know and could not learn of the identities of other minor girls staying in the Barreras home was unreasonable in light of the affidavit of Cynthia Miller, the victim's mother. Petitioner asserts that the PCR court failed to consider and adequately weigh Miller's affidavit.

At the post-conviction proceeding, petitioner presented an affidavit from Miller, in which Miller stated KS told her that KS

was threatened and coerced by Debbie Barreras, her foster mother, into making allegations of abuse by petitioner. (Pet. Exh. 1.) Miller attested that petitioner's trial counsel, Janet Boytano, informed her prior to petitioner's trial that Boytano was aware of another girl who had lived with Barreras and made false allegations of sexual abuse. Miller attested that Boytano informed her prior to trial that "if you wanted a child to have been sexually abused, just place the child in a therapeutic foster home." (Id.) Miller also averred that KS informed her right before petitioner's sentencing that KS was coerced by Barreras into making the false accusations against petitioner. (Id.)

At the post-conviction proceeding, petitioner submitted multiple writings from KS recanting her trial testimony and stating that Barreras pressured her into making the false allegations. (Pet. Exh. 2-3.) Petitioner submitted affidavits from Angela Dean and Jessica Gregorich, who attested that they had been pressured by Barreras to make false allegations of sexual abuse against men other than petitioner. (Pet. Exh. 4 & 6). Petitioner submitted an affidavit from Kent Cherry, Barreras' brother, who averred that Barreras made false allegations of abuse against his father when Barreras was 15 years old. (Pet. Exh. 7.) Presumably, petitioner presented the affidavits to show that had Boytano investigated Barreras, she would have discovered this impeachment evidence, which would have undermined Barreras's credibility. Petitioner

reasons that with Barreras's testimony weakened, there is a reasonable probability that petitioner would have been acquitted.

Petitioner's trial counsel Boytano, in contrast, attested that (1) petitioner did not disclose the names of any individuals he believed would have discredited Barreras; (2) she did not have any information until after petitioner's trial concerning Barreras influencing or coaching girls within her care to fabricate sexual abuse allegations; (3) at the time of the trial, "I had no reason to believe that it would have been worthwhile to investigate the State-licensed home run by Debra Barreras"; (4) she was unable to learn the identity of girls staying at the foster home because such records are confidential under state law; and (5) KS mentioned to Boytano minutes before the sentencing that KS had been pressured by Barreras into testifying against petitioner at trial, and that when Boytano heard that information, she attempted to build a case for a new trial. (Resp. Exh. 118.)

Based on the foregoing, the PCR court made the following relevant findings of fact:

8.    Janet Boytano's affidavit states that she did not know, and could not learn, the identity of other minor girls staying in the Barreras foster home. Ms. Boytano's affidavit avers that this is confidential information and not available to a criminal defense attorney.

9.    Petitioner did not produce evidence showing that the identity of other minor girls staying in the Barreras foster home was accessible to Janet Boytano.    Petitioner failed to produce evidence

16 – OPINION AND ORDER

proving that Janet Boytano was constitutionally ineffective for "failing" to investigate the Barreras foster home and for "failing" to identify and interview other young girls staying in the Barreras foster home.

10.  . . . Petitioner did not produce credible evidence showing that these detailed [sexual abuse] charges were made up by [KS] at the behest or encouragement of Debbie Barreras.

11.  No conclusive evidence was offered showing that [KS] was lying about the sexual abuse and invented the details at petitioner's trial.

12.  There was evidence tending to show that [KS's] may have been pressured by her mother, [Cynthia] Miller, into "recanting." The bar complaints that [Cynthia] Miller brought against DDA Katie Suver, and the complaints that Ms. Miller leveled against the Albany Police Department, were evidence that Ms. Miller thinks that petitioner was wrongfully convicted based on her daughter's fabrications of sexual abuse and penetration. (Resp. Exh. 126, pp. 4-5.)

Petitioner has not presented any new evidence in this proceeding, thus the evidence is confined to the record presented to the state PCR court. In conducting this type of intrinsic review--that the state court failed to consider and weigh relevant evidence--a federal court may not second-guess a state court's fact finding, unless it concludes that the state court was not merely wrong, but actually unreasonable. Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). It is not enough that I would conclude differently under similar circumstances; I must be convinced that *no court* could reasonably

conclude that the findings are supported by the record.  Id. at 1000.

State courts are not required to "address every jot and tittle of proof suggested to them, nor need they 'make detailed findings addressing all the evidence before them.'"  Taylor, 366 F.3d at 1001 (quoting Miller-El v. Cockrell, 537 U.S. 322, 347 (2003)).  To render the PCR court's fact-finding process unreasonable under § 2254(d)(2), the overlooked or ignored evidence must be "highly probative and central" to petitioner's claim "when considered in the context of the full record bearing on the issue presented in the habeas petition."  Id.; Jarvis v. Lampert, 2004 WL 1293896 (D. Or. May 24, 2004).

Petitioner has failed to meet this burden.  When the PCR court's factual findings are viewed as whole, it is clear that the court did not ignore the competing affidavits of Miller and Boytano.  As detailed in paragraphs 10 to 12, the PCR court specifically found that petitioner did not present credible evidence that KS fabricated the charges against petitioner, or that KS made the allegations at the behest of Barreras, and found instead that there was evidence tending to show that Miller may have pressured KS, not Barreras.

Although the PCR court did not expressly state that Miller's affidavit was not credible, reviewing the findings as a whole sufficiently demonstrates that the PCR court determined Boytano's

attestation, not Miller's, was credible.  The record amply supports the PCR court's acceptance of Boytano's affidavit, much less demonstrates that its acceptance was objectively unreasonable. Weaver v. Palmateer, 455 F.3d 958, 965 (9th Cir. 2006), cert. denied, 128 S. Ct. 177 (2007); see also Rice v. Collins, 546 U.S. 333, 339-40 (2006)(trial court's credibility finding was not unreasonable).  The fact that the PCR court did not expressly state that Miller's affidavit lacked credibility does not render its determination "unreasonable" under § 2254(d)(2) because Miller's affidavit, when considered in the context of the full record, is not sufficient to support petitioner's claim.  Taylor, 366 F.3d at 1001.

Even assuming the veracity of Miller's statement, a single previous instance of false allegations does not lend support to petitioner's theory that Boytano knew that Barreras regularly pressured other girls into fabricating sexual abuse allegations, or more importantly, that Barreras pressured KS in this instance. Considering that petitioner's assertion that KS was pressured by Barreras arises only *post hoc* and is inconsistent with the record as a whole, the fact that another girl may have falsely accused someone else under unknown circumstances is of limited value in

assessing whether Boytano provided effective assistance in defending petitioner.[1]

Accordingly, the PCR court's factual finding that Boytano did not know the identities of other minor girls staying in the Barreras home is entitled to deference under § 2254(d)(2). The decision denying petitioner's ineffective assistance of counsel claim was not based on an unreasonable determination of the facts in light of the evidence presented, and petitioner is not entitled to relief on that basis.

## 2. The PCR Court Did Not Unreasonably Apply Strickland.

Petitioner contends that the PCR court's conclusion that Boytano did not render ineffective assistance was an unreasonable application of Strickland. According to petitioner, Boytano had an obligation to investigate Barreras and whether she influenced KS's testimony, and that Boytano's failure to do so rendered ineffective assistance.

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691; Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995), cert.

_____

[1]Notably, petitioner does not directly challenge the PCR court's finding that there was no conclusive evidence that KS lied about the allegations or that KS was encouraged by Barreras to make up the charges against petitioner.

denied, 517 U.S. 1111 (1996); Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001). Counsel must make a reasonable investigation enabling him or her to make informed decisions about how to represent his client. Hendricks, 70 F.3d at 1035; see also Rompilla v. Beard, 545 U.S. 374, 383 (2005)("the duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw the line when they have good reason to think further investigation would be a waste").

Review of counsel's performance is highly deferential and there is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. Williams v. Woodford, 384 F.3d 567, 610 (9th Cir. 2004), cert. denied, 546 U.S. 934 (2005). "The reasonableness of counsel's performance is evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances" and every effort must be made to eliminate the distorting effects of hindsight. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689.

To begin, petitioner has failed to present clear and convincing evidence in this court to overcome the presumption of correctness given to the PCR court's findings that Boytano did not know the identities of any individuals staying in the Barreras

home.  28 U.S.C. § 2254(e)(1).  As such, that finding is entitled to deference.  Miller-El, 537 U.S. at 340.

Petitioner has failed to demonstrate that counsel rendered deficient performance.  Boytano averred that she did not know the names of others staying with Barreras and that petitioner did not identify anyone who could discredit Barreras.  Boytano attested, and the record clearly supports, that allegations of Barreras's corrupting influence on girls within her care arose only after trial.

Meanwhile, Boytano did cross-examine Barreras, and Barreras admitted that while KS was living with her, that KS accused Barreras of doing drugs with her, and that KS would "lie and set people up." (Tr. 465-66.)  In this case, the government's strongest witness was KS.  Counsel did obtain KS's voluminous juvenile file and effectively cross-examined KS.  To be sure, on cross-examination, KS admitted that she had previously called her mother and indicated that she was unsure whether petitioner abused her.  Additionally, Boytano called KS's two best friends and KS's four siblings to discount the facts as alleged by KS.

In light of what Boytano knew at the time, petitioner has failed to demonstrate that trial counsel's performance fell below an objective standard of reasonableness in failing to investigate Barreras and discover the alleged impeachment evidence.  Although reasonable minds may differ, in the context of the full record

before me, I cannot conclude that the PCR court's rejection of petitioner's ineffective assistance claim is objectively unreasonable.

Even if failing to discover this impeachment evidence constituted deficient performance, petitioner has failed to establish that but for counsel's failure to impeach Barreras with the allegations that she improperly influenced other girls, the outcome of his trial would have been different.

In this case, KS testified in great detail about the sexual abuse by petitioner, and gave no indication that she was pressured by Barreras into making false accusations, despite having the opportunity to do so under oath on several occasions. In her initial trial testimony, KS gave no indication that she was pressured by Barreras. Even after hinting to Boytano that Barreras may have pressured her when she wanted to recant, during the investigation following KS's recanting at sentencing, KS *at no point* indicated that Barreras influenced her testimony or pressured her in any way. (Resp. Exh. 116, Supplemental Report.) To be sure, a few minutes into the investigation, KS affirmed her original trial testimony.

Likewise, at the motion for new trial on January 28, 2000, KS again under oath testified that her original testimony was truthful, and that she had recanted because she loved her mother and wanted to be with her family, and thought that petitioner would

not be sentenced to prison if she recanted. (Tr. 738, 746.) KS stated repeatedly that her original trial testimony was truthful, and that she was not pressured by *anyone* regarding her testimony. (Tr. 750-51.) *At no point* during the trial, the investigation, or hearing on the new trial motion did KS indicate that Barreras pressured her into making false accusations against petitioner.

Additionally, Miller's testimony at trial was inconsistent with her current allegations that Barreras pressured KS into making up the sexual abuse allegations. Miller testified that she attended a couple of counseling sessions with KS and Barreras during the time KS was living in Barreras's foster home. (Tr. 572, 583.) Yet, *at no point* in her trial testimony did Miller give any indication that she felt Barreras coerced KS into making false accusations. On the contrary, Miller admitted at trial that *she* was charged with witness tampering for trying to influence KS's testimony. (Tr. 573.) Miller admitted that she continued to inquire about the allegations of sexual abuse by petitioner, despite KS asking her not to do so, as well as a court order prohibiting such contact. (Tr. 622.) Miller even admitted that she tried to get her other daughter to call KS to ask about the sexual abuse charges. (Tr. 623.) But again, *at no point* did Miller testify at trial that she felt Barreras coerced KS or suggest that Barreras had done so, which is inconsistent with her affidavit presented at post-conviction proceeding.

24 - OPINION AND ORDER

Additionally, despite hearing that KS used alcohol and drugs, and "set people up," and that KS recanted the allegations against petitioner at least once before trial, the jury convicted petitioner anyway.

Notably, petitioner has not contended that Boytano failed to discover valuable independent impeachment evidence, such as investigations or suspensions of Barreras's license, that seemingly would more effectively undermine Barreras's testimony. Compare Reynoso v. Giurbino, 462 F.3d 1099, 1113-14 (9th Cir. 2006)(finding counsel ineffective for failing to impeach witnesses with reward evidence concerning their motive to lie, where counsel was aware of the impeachment evidence) and Tucker v. Ozmint, 350 F.3d 433, cert. denied, 541 U.S. 1032 (2004)(discussing ineffective assistance claim where trial counsel failed to discover that witness's license was suspended at time of trial). Rather, petitioner makes general assertions that Boytano could have discovered that Dean and Gregorich made false accusations against other persons under pressure from Barreras had she obtained a court order. Petitioner's argument, without more, assumes too much in hindsight.

In the absence of allegations during the trial that KS was coerced by Barreras, and in light of the evidence in the record as a whole, I cannot conclude that the affidavits of Angela Dean and Jessica Gregorich concerning pressure by Barreras to make false allegations against persons *other than petitioner*, standing alone,

create a reasonable probability that the outcome of petitioner's trial would have been different.  Given the trial testimony of KS and Miller and the relative weakness of the impeachment evidence proffered in the affidavits of Dean and Gregorich, I cannot conclude that the counsel's failure to impeach Barreras with this particular evidence resulted in a trial whose result is unreliable.  Accordingly, petitioner has failed to demonstrate prejudice and thus his ineffective assistance of counsel claim fails.

Perhaps reasonable minds might disagree as to whether trial counsel's performance was deficient or whether petitioner was prejudiced by counsel's failure to discover and use this particular impeachment evidence against Barreras.  However, an erroneous decision by a state court alone is not enough to grant habeas relief.  The state court's application of Strickland must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 65 (2003); Williams v. Taylor, 529 U.S. at 413 (the state court's application of Strickland must be more than merely incorrect—the court must have "unreasonably applied that principle to the facts of the prisoner's case.")  After a thorough review of the record, and considering the weight of the evidence against petitioner and the testimony presented in this case, I conclude the PCR court's rejection of petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).

26 - OPINION AND ORDER

## **CONCLUSION**

Based on the foregoing, petitioner's amended petition for habeas corpus relief (#36) is DENIED, and this proceeding is DISMISSED.

IT IS SO ORDERED.

DATED this _1__ day of OCTOBER, 2009.


_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge